1
2
3
4
5
6
7
8
9
10
11

## IN THE UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PETER T. EDELBACHER,** )<br>)<br>**Petitioner,** )<br>)<br>**vs.** )<br>)<br>)<br>**GEORGE GALAZA, et al.,** )<br>)<br>**Respondent.** )<br>)<br>)<br>_____ ) | **1: 97-CV-5401 LJO WMW HC**<br><br>**FINDINGS AND RECOMMENDATIONS RE PETITION FOR WRIT OF HABEAS CORPUS** |

12
13
14
15
16
17
18
19
20

21        Petitioner is a state prisoner proceeding with counsel on a petition for writ of habeas

22   corpus pursuant to 28 U.S.C. § 2254. The matter was referred to a United States Magistrate

23   Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72-302.

24                                    **PROCEDURAL HISTORY**

25        The initial procedural history of this case has been set forth by the Ninth Circuit as

26   follows:

27        On March 31, 1983, following a trial in California Superior Court for the County of
         Fresno, a jury convicted petitioner of first degree murder with special circumstances.
28        The court sentenced him to death two months later. FN1 On January 23, 1989, the

California Supreme Court affirmed petitioner's conviction, but reversed the death sentence and remanded the matter for retrial of the penalty phase. People v. Edelbacher, 47 Cal.3d 983, 254 Cal.Rptr. 586, 766 P.2d 1 (Cal.1989).

FN1. The State of California bifurcates the process for adjudicating guilt and imposing a death sentence. Thus, the death sentence is imposed through an entirely separate trial. See CAL. PENAL CODE § 190.1 (West 1988); See also Phillips, 56 F.3d at 1032.

On October 15, 1991, while awaiting retrial on the proper penalty, petitioner filed a petition for writ of habeas corpus in the California Superior Court for the County of Fresno which challenged the validity of his guilt conviction on the ground that his lawyer's failure to investigate the issue of insanity constituted ineffective assistance of counsel.

On February 23, 1993, after a three-month evidentiary hearing, the superior court issued a writ which granted relief to allow petitioner to enter a plea of not guilty by reason of insanity and to afford him the opportunity to have a separate trial on that issue. The State promptly appealed this grant of partial habeas relief. On December 15, 1995, the Court of Appeal of the State of California, Fifth Appellate District, reversed the superior court judgment.

One month later, petitioner filed for review in the Supreme Court of California. On March 14, 1996, California's highest court denied the petition. On June 12, 1996, petitioner then filed a petition for writ of certiorari in the United States Supreme Court which was denied on March 17, 1997.

At this point, petitioner had exhausted his remedies in state court with respect to guilt, but not with respect to the proper penalty. Petitioner, after having litigated the insanity issue in the state courts and the United States Supreme Court for approximately six years, next sought federal relief from his conviction by filing petition for writ of habeas corpus in the United States District Court for the Eastern District of California on April 23, 1997. Petitioner relies on Phillips, supra. The State contends that petitioner's writ petition is premature pending the completion of his penalty phase retrial in state court, as required by the California Supreme Court's ruling in 1989.

On July 2, 1997, District Court Judge Coyle granted the State's motion to dismiss. Petitioner filed timely notice of appeal from that order on July 28, 1997.

Edelbacher v. Calderon, 160 F.3d 582, 583 (9th Cir. 1998).

The Ninth Circuit affirmed the judgment of this court in granting the State's motion to dismiss.  Id.

The retrial of the penalty phase of Petitioner's case commenced on October 8, 1998, in the Fresno County Superior Court.  The State withdrew the request for the death penalty. On December 16, 1998, Petitioner was sentenced to life in prison without the possibility of

1   parole.

2       On July 19, 1999, this court reappointed the Federal Defender to represent Petitioner.

3   The case now proceeds on the amended petition filed November 1, 2000.

4   **STATEMENT OF FACTS**

5       The Court finds the Court of Appeal correctly summarized the facts in its December

6   19, 1995,  opinion.  Thus, the court adopts the factual recitations set forth by the Court of

7   Appeal.

8   **LEGAL STANDARD**

9    JURISDICTION

10      Relief by way of a petition for writ of habeas corpus extends to a person in custody

11  pursuant to the judgment of a state court if the custody is in violation of the Constitution or

12  laws or treaties of the United States.  28 U.S.C. § 2254(a);  28 U.S.C. § 2241(c)(3);  Williams

13  v. Taylor, 120 S.Ct. 1495, 1504 fn.7 (2000).  Petitioner asserts that he suffered violations of

14  his rights as guaranteed by the United States Constitution.  In addition, the conviction

15  challenged arises out of the Fresno County Superior Court, which is located within the

16  jurisdiction of this court.  28 U.S.C. § 2254(a); 2241(d).  Accordingly, the court has

17  jurisdiction over the action.

18      On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty

19  Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after

20  its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,*

21  522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997)

22  (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107,

23  117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117

24  S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).

25  The instant petition was filed in 1997, after the enactment of the AEDPA, thus it is governed

26  by its provisions.

27

28                                          3

1   //

2   STANDARD OF REVIEW

3       This court may entertain a petition for writ of habeas corpus "in behalf of a person in

4   custody pursuant to the judgment of a State court only on the ground that he is in custody in

5   violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

6       The AEDPA altered the standard of review that a federal habeas court must apply

7   with respect to a state prisoner's claim that was adjudicated on the merits in state court.

8   Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for

9   habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision

10  that was contrary to, or involved an unreasonable application of, clearly established Federal

11  law, as determined by the Supreme Court of the United States;" or "resulted in a decision

12  that was based on an unreasonable determination of the facts in light of the evidence

13  presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 123

14  S.Ct. 1166, 1173 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v.

15  Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000).

16  "A federal habeas court may not issue the writ simply because that court concludes in its

17  independent judgment that the relevant state-court decision applied clearly established

18  federal law erroneously or incorrectly."  Lockyer, at 1174 (citations omitted).  "Rather, that

19  application must be objectively unreasonable."  Id. (citations omitted).

20      While habeas corpus relief is an important instrument to assure that individuals are

21  constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392

22  (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a

23  criminal conviction is the primary method for a petitioner to challenge that conviction.

24  Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the

25  state court's factual determinations must be presumed correct, and the federal court must

26  accept all factual findings made by the state court unless the petitioner can rebut "the

27

28                                          4

1    presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1);

2    Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99,

3    116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

4          A petitioner who is in state custody and wishes to collaterally challenge his

5    conviction by a petition for writ of habeas corpus must exhaust state judicial remedies.  28

6    U.S.C. § 2254(b)(1).  The exhaustion doctrine is based on comity to the state court and gives

7    the state court the initial opportunity to correct the state's alleged constitutional deprivations.

8    Coleman v. Thompson, 501 U.S. 722, 731, 111 S.Ct. 2546, 2554-55 (1991);  Rose v. Lundy,

9    455 U.S. 509, 518, 102 S.Ct. 1198, 1203 (1982); Buffalo v. Sunn, 854 F.2d 1158, 1163 (9th

10   Cir. 1988).

11         A petitioner can satisfy the exhaustion requirement by providing the highest state

12   court with a full and fair opportunity to consider each claim before presenting it to the federal

13   court.  Picard v. Connor, 404 U.S. 270, 276, 92 S.Ct. 509, 512 (1971); Johnson v. Zenon, 88

14   F.3d 828, 829 (9th Cir. 1996).  A federal court will find that the highest state court was given

15   a full and fair opportunity to hear a claim if the petitioner has presented the highest state

16   court with the claim's factual and legal basis. Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct.

17   887, 888 (1995) (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 1719

18   (1992) (factual basis). Additionally, the petitioner must have specifically told the state court

19   that he was raising a federal constitutional claim.  Duncan, 513 U.S. at 365-66, 115 S.Ct. at

20   888; Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir.1998).

21         When the California Supreme Court's opinion is summary in nature, this court "looks

22   through" that decision and presumes it adopted the reasoning of the California Court of

23   Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501

24   U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas

25   review, "look through" presumption that higher court agrees with lower court's reasoning

26   where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663,

27

28                                            5

669 n. 7 (9th Cir.2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under § 2254(d)(1)).

**DISCUSSION**

Ineffective Assistance of Counsel Based on Conflict of Interest

Petitioner contends that he was deprived of effective assistance of counsel because trial counsel, George Carter, suffered from a variety of conflicts of interest. Petitioner separates the conflict of interest into two types: personal and profession. In regard to the alleged personal conflict, Petitioner claims that it stems from social interactions between Attorney Carter and members of his family and the victim and members of the victim's family. In regard to the alleged professional conflicts, Petitioner claims that conflicts existed because: 1) members of the victim's family approached Carter, before Petitioner's arrest, and he spoke with them regarding their concerns about how the murder was being investigated; and 2) members of the victim's family approached Attorney Carter regarding their concerns regarding child custody issues regarding the son of Petitioner and the victim, his former wife.

This claim was first raised in Petitioner's state habeas petition and was adjudicated in an evidentiary hearing before the Fresno County Superior Court. All of the facts developed at the evidentiary hearing were summarized thoroughly, in a witness-by-witness format, by the Court of Appeal. The Court of Appeal correctly set forth the legal standard as follows:

> The standard for obtaining relief under the Sixth Amendment based upon a conflict of interest depends upon whether the defendant objected to the conflict at trial. Where a trial court requires the continuation of conflicted representation over a timely objection, reversal is automatic. (Holloway v. Arkansas (1978) 435 U.S. 475, 488.) However, where no objection was made at trial, the defendant must demonstrate that an actual conflict of interest adversely affected counsel's performance. (Cuyler v. Sullivan (1980) 446 U.S. 335, 448.)

Unpublished Opinion in Case F019468, 111. The Court of Appeal first addressed Petitioner's contention that a personal conflict of interest existed based on Attorney Carter's relationship with Dr. Glim and Attorney Carter's family's relationship with the Glim family.

The Court of Appeal noted initially that Petitioner had cited no authority to support his contention, and that after hearing extensive testimony on the subject, the lower court found no conflict existed.  It found that Rule 4 -101 of the Rules of Professional Conduct of the State Bar of California, which was cited by Petitioner, did not apply because Attorney Carter never represented any member of the Glim family.   It also found that the social relationship between the Glims and the Carters did not amount to a conflict of interest, and so did not disqualify Attorney Carter from representing Petitioner.  The Court of Appeal found of "critical importance" the lower court's finding that Attorney Carter's relationship with Mr. Glim was a "casual relationship" at best.  Unpublished Opinion in Case F019468, 115.

The Court of Appeal found that even assuming that Petitioner had established a potential conflict based on the Carters' relationship with the Glim family, Petitioner had failed to present any evidence that he was prejudiced by the alleged conflict.  In particular, the Court of Appeal noted that no evidence was presented to show that Attorney Carter's defense of Petitioner was any less vigorous because of the alleged conflict.

In the present case, this court finds that Petitioner has failed to carry his burden to establish that the Court of Appeal's  adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).  The Court of Appeal conducted an exhaustive review of the facts, and adopted the detailed factual findings made by the trial court. Petitioner has not presented the required clear and convincing evidence to rebut the presumption that those factual findings are correct.  28 U.S.C. § 2254(e)(1).  Further, Petitioner has in no way demonstrated that the Court of Appeal applied clearly established federal law erroneously or incorrectly, much less in an way that was objectively unreasonable.  See,  Lockyer v. Andrade, 123 S.Ct. 1166, 1174 (2003)(citations omitted).

1    Petitioner simply disagrees with the Court of Appeal's conclusion.  This is insufficient to

2    form a basis for habeas corpus relief.

3    Ineffective Assistance of Counsel Based on Failure to Investigate and Present Available

4    Mental Defenses

5          Petitioner contends that Attorney Carter was constitutionally ineffective due to his

6    failure to investigate and present mental state defenses available to Petitioner during the guilt

7    phases.  He claims that Attorney Carter failed to competently counsel and educate his client

8    as to the feasibility and necessity of the defenses of diminished capacity and insanity, and

9    failed to pursue, develop and present the defense of diminished capacity.

10          In reviewing this claim, the Court of Appeal rejected the finding by the Superior

11   Court that Attorney Carter rendered ineffective assistance of counsel by failing "to

12   investigate the issue of insanity through medical and psychological examinations and

13   exhaustive investigation into petitioner's personal history on the issue of sanity" thereby

14   preventing him from being in a position to advise Petitioner on the viability of an NGI

15   defense in relation to the alibi defense.  Instead, after an exhaustive review of the evidence

16   presented at the evidentiary hearing, the Court of Appeal concluded that, "since Hedberg did

17   not disclose any realistic basis for a mental defense .  .  .   Carter discharged his obligation

18   to investigate mental defenses and was not required to seek other experts until he found one

19   who would say defendant was insane.  His representation was reasonable under the

20   circumstances known to him at the time."  Unpublished Opinion in case number F019468,

21   80.  The Court of Appeal noted, as found by the Superior Court, that, "the stubborn

22   insistence by the parents as well as petitioner's refusal to consider a mental defense were

23   important factors in pointing Carter away from further investigation of mental state," finding

24   that "the family effectively erected barriers to the continued investigation of such a defense."

25   Id. at 81.          The Court of Appeal also addressed the issue of whether Petitioner would

26   have been prejudiced had Carter actually failed to adequately investigate mental defenses.

27

28                                                8

The Court of Appeal accepted the State's argument that the prejudice at issue was whether Petitioner would have entered an insanity plea if Carter had more aggressively investigated an insanity defense.  See Penal Code Section 1018 (decision to plead not guilty by reason of insanity is personal to the defendant).   It found of "great significance" the fact that at his evidentiary hearing, Petitioner did not take the stand to testify that he would have entered an insanity plea or even that he would have given more thought to it if presented with more persuasive evidence that it was a more viable defense than his alibi.  Id. at 88.   Further, it found of great significance the fact that the Superior Court did not make a finding that Petitioner would have entered such a plea.  Id. at 89.

After reviewing Petitioner's arguments that the circumstantial evidence showed that he could have been convinced to plead not guilty by reason of insanity, the Court of Appeal reached the following conclusion:

> In short, there is nothing in the records Carter failed to investigate which was particularly in attempting to convince defendant that he was legally insane or that insanity was his best defense.  Instead, the evidence appears to confirm what Hedberg had told Carter all along - - that defendant had emotional problems but not to the point of a mental defense, and that he could only hurt and not help defendant.  Given the circumstances as they stood at the relevant time, it is not reasonably probable defendant would have entered a NGI plea but for Carter's lack of further investigation.

Id. at 100.

In the present petition, Petitioner simply reviews and reargues all of the evidence considered by the Court of Appeal in addressing this issue.  This court finds that by doing so, Petitioner has failed to carry his burden to establish that the Court of Appeal's  adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).  To the contrary, as Respondent argues, Petitioner's claim is quite similar to that made in Bean v. Calderon, 163 F.3d 1073 (9th Cir. 1998).  In Bean as in the present case, the

9

defendant claimed that he was uninvolved with the charged murder.  The defendant asserted

his false alibi to his lawyer, as did Petitioner, despite the fact that the defendant's fingerprints

were found at the murder scene and he confessed the crime to witnesses.  Id. at 1075-76.  The

defendant then sought habeas corpus relief on the ground that his lawyer rendered ineffective

assistance of counsel by presenting an alibi defense instead of a defense of diminished

capacity.  The Ninth Circuit rejected this claim, holding as follows:

> These contentions fail to establish that Roehr's performance was deficient. On the
> contrary, because the diminished capacity defense Bean proposes would have
> conflicted with the alibi theory, "it was within the broad range of professionally
> competent assistance for [Roehr] to choose not to present psychiatric evidence which
> would have contradicted the primary defense theory." Correll v. Stewart, 137 F.3d
> 1404, 1411 (9th Cir.), cert. denied, 525 U.S. 984, 119 S.Ct. 450, 142 L.Ed.2d 404
> (1998). To the extent that Bean challenges Roehr's decision to forgo the diminished
> capacity defense in favor of the alibi defense, this challenge is misplaced. In light of
> Bean's assertion to Roehr that he had not been at the Schatz residence at the time of
> the crimes, his reluctance to blame his alleged co-burglar, and his own refusal to
> adopt the diminished capacity defense, Roehr made a reasonable strategic choice to
> present an alibi defense. Once Roehr reasonably chose that theory, largely on the
> basis of Bean's own representations, his duty to investigate the directly conflicting
> diminished capacity defense was at an end. See Turk v. White, 116 F.3d 1264, 1267
> (9th Cir.1997), cert. denied, 522 U.S. 1125, 118 S.Ct. 1073, 140 L.Ed.2d 132 (1998);
> but see Johnson v. Baldwin, 114 F.3d 835, 839-40 (9th Cir.1997) (holding that under
> the circumstances of that case, an unreasonable failure to investigate and discredit a
> weak alibi defense was prejudicial ineffective assistance of counsel).

Bean, 163 F.3d at 1082.  For all of the same reasons stated in regard to Petitioner's claim of

ineffective assistance  based on conflict of interest, the court finds that this contention

presents no basis for habeas corpus relief.

Denial of Fair Trial Based on Denial of Motion for Change of Venue

Petitioner contends that he was denied a fair trial by the trial court's denial of his

pretrial  motion for change of venue pursuant to Penal Code Section 1033.  He claims that

the publicity surrounding this case undermined the likelihood of a fair trial in Fresno County

and should have resulted in the transfer of the case to another venue.  He stresses that the

news reports concerning the killing of Lela Schwartz - Edelbacher, followed by only 5 weeks

the acquittal of Petitioner in a highly publicized, televised trial of charges she had brought

against him in Fresno County's first spousal rape case.

10

This contention was raised on direct appeal to the California Supreme Court, which analyzed the pretrial publicity, the population of Fresno County, and the community status of the victim and Petitioner.   The court concluded that Petitioner had failed to demonstrate a reasonable likelihood that denial of his change of venue motion resulted in the denial of a fair trial.  Petitioner presents no argument as to how this adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding," as he is required to do pursuant to 28 U.S.C. § 2254(d).   See generally Harris v. Pulley, 885 F.2d 1354, 1361 (9th Cir. 1988)(discussing standards for prejudicial pretrial publicity).  Rather, Petitioner simply repeats his argument that under the facts of the case, the trial court should have granted a change of venue.  This is insufficient to provide a basis for habeas corpus relief.

Denial of Motion to Suppress Evidence of Surveillance and Recording of Petitioner's Brother

Petitioner claims that the trial court erred in denying his motion to suppress evidence of the surveillance and recording of his telephonic conversation with his brother which occurred at the jail, and further prejudicing the outcome of the trial by improperly instructing the jury on the use of the wrongfully admitted evidence.

Petitioner claims that the surveillance and recording of the conversation between himself and his brother violated his statutory right to have personal visits under Penal Code section 2601(d), as well as his right to privacy under the California Constitution.  He also claims that the denial of his motion to suppress violated his federal Constitutional right to due process, because there was a "failure to observe that fundamental fairness essential to the very concept of justice" and "that the absence of that fairness fatally infected the trial, " quoting McGuire v. Estelle, 502 U.S. 62 (1991).  Relatedly, he claims that his right to due

11

1   process was violated by cumulative error.

2        To the extent that Petitioner argues that the evidence introduced at trial was the

3   product of an unreasonable search and seizure in violation of the Fourth Amendment,

4   Petitioner may not now raise that claim in a petition for writ of habeas corpus.  See Gordon

5   v. Duran, 895 F.2d 610, 613 (9th Cir. 1990) ( habeas petitioner who challenges a state court's

6   admission into evidence of prior acts of misconduct is not entitled to habeas corpus relief

7   unless the state court's admission of this evidence violated the petitioner's federal due process

8   right to a fair trial under the Constitution).

9        Petitioner's claim that the surveillance and recording of the conversation violated his

10  right under Penal Code Section 2601(d) and his right to privacy under the California

11  Constitution, this claim provides no basis for habeas corpus relief.  Habeas corpus relief is

12  not available to correct alleged errors in the state court's application or interpretation of state

13  law.  Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480 (1991); Middleton v. Cupp,

14  768 F.2d 1083, 1084-85 (9th Cir.1985).

15       In regard to his due process claim, the California Supreme Court found that Petitioner

16  did not entertain a subjective expectation of privacy when speaking with his brother in jail,

17  holding as follows:

18       In any event, the trial court's finding that defendant had no subjective expectation of
         privacy is supported by substantial evidence. During the conversation defendant
19       never mentioned McClure by name and never used the word "kill" or "murder."
         Defendant wrote "hit Signe" on a pad of paper which he showed to his brother and in
20       the subsequent conversation used veiled allusions and awkward circumlocutions to
         refer to the intended murder and the manner in which he wanted it carried out.
21       Defendant's own conduct thus provides sufficient grounds for rejecting his privacy
         claim.
22

23  People v. Edelbacher, 47 Cal.3d 983, 1004 (1989).  Petitioner fails to carry his burden of

24  demonstrating that this adjudication of the claim "resulted in a decision that was contrary to,

25  or involved an unreasonable application of, clearly established Federal law, as determined by

26  the Supreme Court of the United States;" or "resulted in a decision that was based on an

27

28                                        12

unreasonable determination of the facts in light of the evidence presented in the State Court proceeding," as he is required to do pursuant to 28 U.S.C. § 2254(d).   Accordingly, this claim presents no basis for habeas corpus relief.

Admission of Tape Recording of Jail Visiting Room Conversation

Petitioner contends that the trial court committed reversible error in admitting, over defense objection, the tape recording of his jail visiting room conversation with his brother and the accompanying testimony of his brother.   Petitioner claims that the tape recording contained irrelevant, improper character evidence under California Evidence Code Section 1101, and was highly prejudicial.

In ruling on this claim, the California Supreme Court summarized the facts as follows:

> After jury selection, defendant moved to withdraw his plea of not guilty to the charge of solicitation of murder and to enter a plea of guilty to that charge. Following advisement of constitutional rights and plea consequences per In re Tahl (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449], the motion was granted and defendant's guilty plea was accepted.  In response to this court's questions defendant said he asked his brother to kill McClure to prevent her from testifying against him on the charge of murdering Lela.
> Defendant then moved to exclude evidence of the conversation during which the solicitation was made on the ground it was irrelevant to any remaining issue or that any probative value it might have was exceeded by the risk of undue prejudice. As part of the motion, defendant offered to inform the jury by stipulation of the guilty plea to the charge of solicitation.  The prosecutor opposed the motion, arguing that the evidence was relevant to prove consciousness of guilt for the murder of Lela, to corroborate McClure's testimony, and to prove that defendant had murdered Lela by lying in wait.  The trial court denied defendant's motion, finding that the evidence was relevant to prove consciousness of guilt and the special circumstances of lying in wait, and that the probative value of the evidence exceeded the risk of undue prejudice.  On defendant's further motion, the prosecutor agreed to excise two short passages in the tape.  As part of the prosecution's case-in-chief, the tape of the jailhouse conversation was played for the jury and defendant's brother Chris testified concerning its contents.

The Supreme Court reviewed  the rule generally precluding the admission of evidence of other crimes by the Defendant under Evidence Code Section 1101.  It discussed the exceptions to the rule, including the admission of evidence to prove consciousness of

13

1    guilt and to prove lying-in-wait, the risk of undue prejudice, applying these exceptions to the

2    facts of the case.  It also discussed the giving of the other crimes instruction under CALJIC

3    No. 2.50(1979 rev.).

4        As Respondent argues, Petitioner focuses his arguments on California law, alleging

5    violations of Evidence Code Sections 1101 and 352.  These allegations do not form a basis

6    for federal habeas corpus relief.  See  Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475,

7    480 (1991) (Habeas corpus relief is not available to correct alleged errors in the state court's

8    application or interpretation of state law.).

9        Petitioner makes a general argument that the ruling by the trial court violated his

10    federal due process rights, because it deprived him of fundamental fairness to an extent that

11    fatally infected the whole trial.  However, this court finds that  Petitioner provides no

12    explanation, factual basis or legal authority to support a federal due process claim regarding

13    the admission of the evidence.  Such vague and conclusory claims are insufficient to support

14    a claim for habeas relief.  See Advisory Committee Notes to Rule 4, Rules Governing

15    Section 2254 Cases ("In addition, 'notice' pleading is not sufficient, for the petition is

16    expected to state facts that point to a "real possibility of constitutional error."  See *Aubut v.*

17    *State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).  Further, as Respondent argues, under

18    controlling Ninth Circuit authority, the admission of prior "bad acts" evidence violates due

19    process only when "there are no permissible inferences the jury may draw from the

20    evidence."  Houston v. Roe, 177 F.3d 901, 910 (9th Cir. 1999).  The court finds, in light of

21    the California Supreme Court's discussion, that this is not true in the present case.

22        Petitioner's claim of instructional error in regard to the other-crimes instruction,

23    again rests on California law and so provides no basis for habeas corpus relief. See, Estelle v.

24    McGuire, 502 U.S. 62, 71-72 (1991).  To obtain federal collateral relief for errors in the jury

25    charge, a petitioner must show that the ailing instruction by itself so infected the entire trial

26    that the resulting conviction violates due process.  See, id. at 72.  Additionally, the

27

28                                                            14

instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Id.   Here, the trial court instructed the jury that the prior crimes evidence could not be considered to prove that Petitioner was a person of bad character or that he has the disposition to commit crimes.  This limiting instruction was expressly approved in Estelle.   In light of this instruction, Petitioner cannot show that the jury believed that the evidence could be used for an unconstitutional purpose.  As with his claims in regard to the admission of the evidence, Petitioner provides no authority demonstrating that the California Supreme Court's resolution of this claim was contrary to any United States Supreme Court authority or was unreasonable in light of the facts. Accordingly, the court concludes that this claim presents no basis for habeas corpus relief.

Admission of Adoptive Admission Evidence

Petitioner contends that the trial court erred in admitting hearsay statements of Phil Green as admissions adopted by Petitioner, and in instructing the jury pursuant to CALJIC 2.71.5.  Petitioner argues that Green's testimony was hearsay and amounted to improper speculation and personal opinion.  He claims that the hearsay statement was not properly admissible under Evidence Code Section 1221.

The California Supreme Court explained this issue as follows:

B. *Adoptive Admissions*

Defendant objected at trial on hearsay and relevance grounds to the entire testimony of Phil Green concerning his conversation with defendant on or about December 14, 1981.  Based on an offer of proof, the court overruled the objection, ruling that evidence of the conversation was relevant and, although hearsay, was admissible under the adoptive admission exception to the hearsay rule.  (Evid. Code, § 1221). The court stated its ruling was without prejudice to further objections during testimony. . . .

During cross-examination, defense counsel asked whether the witness had given defendant an opportunity to respond to the accusations against him. . . .

As this court stated in *People v. Preston* (1973) 9 Cal.3d 308, 313-314 [107 Cal.Rptr. 300, 508 P.2d 300]: "If a person accused of having committed a crime, under circumstances which fairly afford him an opportunity to hear, understand, and to reply, and which do not lend themselves to an inference that he was relying on the right of silence guaranteed by the Fifth Amendment to the United States Constitution, and he fails to speak, or he makes an evasive or equivocal reply, both the accusatory

statement and the fact of silence or equivocation may be offered as an implied or adoptive admission of guilt." (See also, *People v. Simmons* (1946) 28 Cal.2d 699, 712 - 713 [172 P.2d 18].)

Defendant contends Phil Green's testimony did not meet the requirements of the adoptive admissions exception because Green's statements to defendant were ambiguous and not clearly accusatory, and because Green expressly told defendant not to respond. We are not persuaded.

To warrant admissibility, it is sufficient that the evidence supports a reasonable inference that an accusatory statement was made under circumstances affording a fair opportunity to deny the accusation; whether defendant's conduct actually constituted an adoptive admission becomes a question for the jury to decide. (*People v. Richards* (1976) 17 Cal.3d 614, 618 [131 Cal.Rptr. 537, 552 P.2d 97].)

Phil Green's statement linked the theft of Green's shotgun to defendant and to Lela's death. In context it was apparent that Green was accusing defendant of stealing Green's shotgun and using it to kill Lela. Green's statement that he could not understand why one person would kill another invited defendant to comment on the accusation. The could reasonably view defendant's response, that Lela knew something would happen, as demonstrating that defendant understood the accusation.

Phil Green cut defendant off only after defendant made this remark that Lela knew something would happen. Defendant's statement attempt to shift blame onto the victim, apparently referring to defendant's threat to blow Lela's head off if she "went through with it." The statement could reasonably be view as an acquiescence in the truth of the accusation, reflecting consciousness of guilt. Under these circumstances defendant could have understood Green's statement cutting defendant off to mean that Green did not want to hear the reasons why defendant had killed Lela. Defendant did make further remarks, including the statement he wished "the whole thing was over with." Had defendant intended to make a denial, the jury could reasonably find he had ample opportunity to do so. Phil Green's testimony was properly admitted under the adoptive admission exception to the hearsay rule.

People v. Edelbacher, at 1010-1012.

Petitioner's argument that Green's testimony regarding Petitioner's statements was not admissible as adoptive admission is based on Evidence Code Section 1221. Again, these state law allegations not form a basis for federal habeas corpus relief. See Estelle v. McGuire, 502 U.S. 62, 67-68. As to any due process claim, the California Supreme Court found that the evidence of Petitioner's conversation with Green does fall within the hearsay exception for adoptive admissions. This court is bound by the state court's ruling on this issue. See Clemons v. Mississippi, 494 U.S. 738, 739-40 (1990) (a federal court has no basis for disputing a state's interpretation of its own law). Further, as stated above in regard

16

to the admission of the tape recording, Petitioner's general references to due process are insufficient to state a claim for habeas corpus relief.  Petitioner has not shown that the California Supreme Court's ruling on this issue "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" as the exception for adoptive admissions is recognized as a firmly rooted exception to the hearsay rule.  See U.S. v. Monks, 774 F.2d 945 (9th Cir. 1985).    Accordingly, this claim presents no basis for habeas corpus relief.

Prior Inconsistent Statement Evidence

Petitioner contends that the trial court erred by allowing the prosecution to admit as rebuttal testimony the statements of Earl McClure.  The court  admitted the statements under the hearsay exception for prior consistent statements, pursuant to Evidence Code Section 1200(a).

The California Supreme Court addressed this claim as follows:

C. *Prior Consistent Statements*

Defendant's next contention is error in the admission of prosecution evidence under the prior consistent statement exception to the hearsay rule.

Testifying during the prosecution's case-in-chief, McClure's former husband Michael McClure stated that his marriage to McClure had been dissolved in 1980 and that custody of their one child had been awarded to McClure.  Defendant had telephoned Michael on the morning of January 4, 1982, and had arranged a meeting for that afternoon at a restaurant in Fresno to discuss Michael's continuing dispute with McClure over custody of their son.

During the meeting, according to Michael's testimony, defendant said he had been through a divorce recently and there had been a spousal rape case which Michael might have read about in the paper.  Defendant said he had been cleared and shortly afterward his wife had been killed.  Michael expressed sympathy but defendant said, "Well, really, it worked out good for me because I don't have any child support payments now and I have custody of my son."  Defendant said, "the same thing could happen for you" and "I know some people that could take care of the problem for you, or I could."  Defendant continued, "If she wasn't around, you wouldn't have any child support and you would have custody of your son."  Michael changed the subject and left shortly thereafter.

During cross-examination Michael stated he had received immunity for his testimony and was accompanied in court by his attorney.  Defense counsel asked whether Michael had reported the conversation to McClure and Michael replied that he had

not because they were not on speaking terms at that time. Defense counsel also asked Michael when he became aware that defendant was suspected of killing Lela.

Defendant testified that it was Michael who had proposed the meeting and had suggested that defendant could arrange for something to happen to McClure similar to what had happened to Lela.  Defendant said he became angry at the insinuation that he had killed Lela and he immediately terminated the conversation.

Defendant moved to exclude proposed rebuttal testimony of Michael's father.  Based on an offer of proof, the court denied the motion, finding that the proposed testimony was admissible under the prior consistent statement exception to the hearsay rule.  Thereafter Michael's father testified, in accordance with the offer of proof, that he had accompanied Michael to the restaurant where Michael met defendant.  Michael's father sat apart and did not overhear any of the conversation between Michael and defendant but immediately afterwards Michael had stated: "Dad, this guy is crazy. We better get out of here.  The way he wanted me  – the way I could get custody of my son is to have  – have a hit man wipe out his mother."

An out-of-court statement by a witness is not barred by the hearsay rule if the statement is consistent with the witness's testimony and is offered after an express or implied charge that the testimony has been recently fabricated or influenced by bias or other improper motive and the statement was made before the bias, motive for fabrication, or other improper motive is alleged to have arisen.  (Evid. Code, § § 791, 1236.)  Defendant concedes that Michael's out-of-court statement, as reported by Michael's father, was consistent with Michael's testimony and that there was an express or implied charge that Michael's testimony was fabricated and influenced by bias and other improper motives.  But defendant maintains that the prior statement was inadmissible because there was no evidence that the improper motive or intent to fabricate arose after the prior statement.

The cross-examination concerning Michael's failure to warn his former wife provided a sufficient basis for admissibility as a prior consistent statement.  Where cross-examination concerning failure to report an incident implies a later fabrication, evidence that the incident was reported shortly after its occurrence is admissible. (See *People v. Welch* (1972) 8 Cal.3d 106, 116 [104 Cal.Rptr. 217, 501 P.2d 225]; *People v. Gentry* (1969) 270 Cal.App.2d 462, 473 [76 Cal.Rptr. 336].)  The trial court did not err in admitting as prior consistent statements the testimony of Michael's father.

People v. Edelbacher, 1012-1014.

Petitioner's contention regarding the admission of Earl McClure's testimony is based on Evidence Code Section 1200(a), with the same general references to due process made in connection with his above evidentiary claims. For the reasons previously stated, this contention provides no basis for habeas corpus relief.

Testimony of William (Skip) Johnson

Petitioner contends that the trial court erred in failing to instruct the jury sua sponte

18

that the testimony of jailhouse snitch William (Skip) Johnson should have been viewed with caution and distrust.  Petitioner argues that such an instruction was required because the testimony of informants is inherently unreliable.

The California Supreme Court rejected this claim as follows:

> Defendant contends that the trial court erred in failing to instruct the jury sua sponte that the testimony of jailhouse informants should be viewed with caution and distrust. The contention is without merit; as we have recently held, a trial judge has no duty to give sua sponte cautionary instructions regarding an informant's testimony.  (*People v. Hovey* (1988) 44 Cal.3d 543, 566 [244 Cal.Rptr. 121, 749 P.2d 776].)

People v. Edelbacher, 1014.  Petitioner has provided nothing to shown that this ruing"resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  While Petitioner provides a citation to United States v. Garcia, 528 F.2d 580, 587-88 (5th Cir. 1976), in which the court held, "In this Circuit, a defendant is entitled to a special cautionary instruction on the credibility of an accomplice or a government informer if he requests it and the testimony implicating the accused is elicited  solely from the informer or accomplice."

This holding is insufficient to support any relief in the present case for the obvious reasons that this court does not sit in the Fifth Circuit and, further, in this case Petitioner did not request a cautionary instruction.   Accordingly, no basis for habeas corpus relief is stated.

Evidence of Shoe Prints

Petitioner contends that the trial court committed reversible error in failing to exclude the evidence of shoe prints seized at the residences of Petitioner and his parents.  Petitioner claims that the evidence should have been excluded because of the illegality of the searches and because the evidence was irrelevant, confusing and unduly prejudicial.  Petitioner also alleges that the failure of his trial counsel to move to suppress this evidence deprived Petitioner of his Sixth Amendment right to effective assistance of counsel.

The California Supreme Court addressed this claim as follows:

After investigating the scene of Lela's shooting, Deputy Sheriff Johansen went to

19

defendant's residence in Madera, arriving at approximately 3:30 a.m.  Finding no one at home, he parked nearby and watched the residence for about five hours.  From that location Johansen went to the residence of defendant's parents, also in Madera.  Defendant's parents were at home and spoke to the officers.  As he was about to enter his own vehicle, intending to leave, Johansen noticed some shoeprints which appeared similar to those found at the murder scene.  The officer followed the shoeprints back to the driver's side of a pickup parked in the driveway.  Defendant's mother told the officer that defendant was the last person to drive that truck.  Johansen arranged to have these prints photographed by a criminalist.  He also arranged for photographs to be taken at about the same time of similar shoe tracks at defendant's residence in the front yard and on the front porch.

A criminalist testifying for the prosecution concerning the tracks found at the three locations could only say that they exhibited similar sole patterns.  Because they were all partial prints, the length and width of the prints could not be measured to determine shoe size, nor were any distinctive wear characteristics discernible.  Thus the witness was unable to determine whether any of the various tracks had been made by the same shoe, shoes of the same size, or even shoes from the same manufacturer.  In closing argument the prosecutor disavowed reliance on the shoe track evidence to establish defendant's guilt.

Defendant maintains that the shoe track evidence obtained at the residences of defendant and his parents was illegally seized and therefore inadmissible.  He also maintains that the evidence was lacking in relevance and that any relevance it might have had was outweighed by the risk of prejudice and on this basis it should have been excluded.

*Search and seizure*.  Defendant did not bring a pretrial motion to suppress the shoe track evidence under section 1538.5, nor did he challenge the evidence at trial on search and seizure grounds.  He nevertheless maintains that the issue is reviewable because failure to seek exclusion of this evidence on Fourth Amendment grounds constituted ineffective assistance of counsel.  We conclude there was no Fourth Amendment violation.

An officer's observation with the naked eye from a vantage point open to the public is ordinarily not regarded as a search within the meaning of the constitutional proscription against warrantless searches.  (*People v. Cook* (1985) 41 Cal.3d 373, 380 [221 Cal.Rptr. 499, 710 P.2d 299]; *People v. Mack* (1980) 27 Cal.3d 145, 150 [165 Cal.Rptr. 113, 611 P.2d 454].)  In determining whether a warrantless government surveillance is proscribed by the Fourth Amendment, the inquiry is "whether the government intruded unreasonably on an expectation of privacy which society is prepared to recognize as valid."  (*Cook, supra*, at p. 379; see also, *In re Deborah C.* (1981) 30 Cal.3d 125, 135 [177 Cal.Rptr. 852, 635 P.2d 446].)  The determining factor is whether common habits in the use of property result in a reasonable expectation of privacy in a given situation.  (*Cook, supra*, at p. 381, fn. 3; *In re Deborah C. , supra*, at p. 137.)  "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."  (*Katz v. United States* (1967) 389 U.S. 347, 351 [19 L.Ed.2d 576, 582, 88 S.Ct. 507].)

Here the evidence in question was observed  by Officer Johansen while he was looking for defendant at the residences of defendant and his parents.  The tracks were outside in the front porch, driveway, and front yard portions of the residences.  The

20

tracks were apparently visible on the normal route used by visitors approaching the front doors of the residences and there is no indication of solid fencing or visible efforts to establish a zone of privacy.  Accordingly, observing and photographing the shoe tracks did not violate the Fourth Amendment.

*Relevance*.  Defendant contends that evidence of the shoe tracks should have been stricken as irrelevant because, though it might engender speculation, the evidence would not support a reasonable inference as to any fact at issue.  A motion to strike the evidence was made at trial on the ground there was "insufficient foundation to show that they in any way relate to" defendant.

Defendant's objection goes to weight rather than to admissibility.  (See *People v. Cordova* (1979) 97 Cal.App.3d 665, 669 [158 Cal.Rptr. 852].)  Relevant evidence is evidence having any tendency in reason to prove or disprove a disputed fact properly at issue.  (Evid. Code, § 210; *People v. Burgener* (1986) 41 Cal.3d 505, 527 [224 Cal.Rptr. 112, 714 P.2d 1251].)  Evidence that shoe tracks at defendant's residence and leading to a vehicle last driven by defendant were consistent with those found at the murder scene had some tendency to establish that defendant was at the murder scene and fired the fatal shot.  The trial court did not err in overruling defendant's objection on grounds of relevance.

*Evidence Code section 352 motion*.  Defendant argues that the shoe track evidence should have been excluded under Evidence Code section 352 because its probative value was exceeded by the risk of undue prejudice.  He further argues that the trial court erred in failing to state on the record that it had weighed prejudice against probative value.

As stated, defense counsel's motion to strike the shoe track evidence was on the ground of lack of foundation.  In opposing the motion the prosecutor characterized the issue as one of relevancy and stated that the evidence was relevant and the proper weight was for the jury to determine.  Defense counsel did not dispute this characterization of the motion but in argument he did refer twice to the evidence being prejudicial and its probative value being slight.  However, the only claimed prejudice was the inducement to the jury to speculate that the prints were made by the same shoes and that the shoes had been worn by defendant.  The trial court stated that the evidence was relevant and could even be to defendant's advantage in that defendant's sister-in-law had testified defendant had been wearing shoes with a different sole pattern on the night of Lela's death.  The trial court denied the motion to strike without further elaboration.

To the extent that defendant's motion to strike may be regarded as a motion under Evidence Code section 352, it was properly denied.  There was little risk of prejudice from the shoe track evidence.  The evidence was not of a kind likely to engender sympathy for the victim, to connect defendant with uncharged crimes, to arouse the emotions of the jurors, or to be used in some manner unrelated to the issue on which it was admissible.  Defendant's argument that the expert testimony tended to give the evidence an artificial aura of reliability is unpersuasive.  The expert witness did not claim to have discovered anything other than what the jurors could see for themselves by examining the photographs – i.e., that there was a similarity in the sole patterns.  In short, defendant has failed to demonstrate any significant risk of prejudice.

When an objection is raised under Evidence Code section 352, the record must

21

affirmatively show that the trial judge did in fact weigh prejudice against probative value. (*People v. Wright* (1985) 39 Cal.3d 576, 582 [217 Cal.Rptr. 1, 609 P.2d 468].) Here the trial court permitted counsel to argue the motion to strike at length. Counsel's argument as to both probative value and prejudice focused on what he characterized as the speculative nature of the evidence. No other risk of prejudice was suggested. The record, including the court's comments, sufficiently establishes that the court weighed and rejected the arguments of defense counsel.

*People v. Edelbacher*, 1014-1017.

To the extent that Petitioner argues that the shoe print evidence should have been excluded as the fruit of an illegal search, that claim cannot form the basis for relief in this action. A federal district court cannot grant habeas corpus relief on the ground that evidence was obtained by an unconstitutional search and seizure if the state court has provided the petitioner with a "full and fair opportunity to litigate" the Fourth Amendment issue. Stone v. Powell, 428 U.S. 465, 494, 96 S.Ct. 3037, 3052 (1976); Woolery v. Arvan, 8 F.3d 1325, 1326 (9th Cir. 1993), *cert denied*, 511 U.S. 1057 (1994). The only inquiry this court can make is whether Petitioner had a fair opportunity to litigate his claim, not whether Petitioner did litigate nor even whether the court correctly decided the claim. Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996); see, also, Gordon v. Duran, 895 F.2d 610, 613 (9th Cir. 1990) (holding that because Cal. Penal Code § 1538.5 provides opportunity to challenge evidence, dismissal under Stone was necessary). Here, Petitioner had a full and fair opportunity to litigate the Fourth Amendment issue before the California Supreme Court. This ends the inquiry. Because Petitioner cannot demonstrate a Fourth Amendment violation, he also cannot demonstrate ineffective assistance of counsel based on counsel's failure to move to exclude the evidence on the basis of such a violation.

Petitioner's claims that the shoe print evidence was irrelevant and should have been excluded under Evidence Code Section 350 is a state law claim which provides no basis for federal habeas corpus relief. See Estelle v. McGuire, 502 U.S. 62, 67-68. Again, his general references to a due process violation are also insufficient. Accordingly, the court concludes that this claim provides no basis for habeas corpus relief.

Murder by Lying in Wait

Petitioner contends that his conviction of first degree murder is invalid because the evidence was insufficient to support a guilty verdict based on murder by lying in wait under Penal Code Section 189.  He claims that the evidence was insufficient to support the giving of CALJIC 8.25 (murder by lying in wait) and insufficient to support a finding that the shooting was preceded by any period of waiting, watch and concealment.  Further, Petitioner argues that regardless of whether there was sufficient evidence of lying in wait, the wording of CALJIC 8.25 improperly relieved the prosecutor of the burden of proving that the murder was both deliberate and premeditated.

The California Supreme Court rejected these claims as follows:

H.  *Lying in Wait as an Element of First Degree Murder*

Defendant contends that the verdict of first degree lying-in-wait murder is not supported by substantial evidence that the shooting of Lela was preceded by a period of waiting, watching and concealment; he also contends that CALJIC No. 8.25, as given in this case, incorrectly defines lying in wait as an element of first degree murder.

*Sufficiency of the evidence.*  Defendant argues that the prosecution was forced to rely on the jailhouse tape to establish lying in wait and that the tape did not provide substantial evidence of lying in wait.  We have previously concluded that the tape was relevant and admissible to prove lying in wait; it was not, however, the only evidence on that issue.  As we shall see, there was substantial evidence of lying in wait apart from the jailhouse tape.

In *People v. Harrison* (1963) 59 Cal.2d 622 [30 Cal.Rptr. 841, 381 P.2d 665], the victim was assaulted and killed as she left her apartment during the evening in the company of another woman.  As here, the defendant contended there was insufficient evidence to establish lying in wait.  We rejected the contention, stating, "From the evidence that defendant had armed himself with a butcher knife, that he was not observed on the street prior to the attack, and that he attacked Mrs. Martin [the victim] immediately upon her emergence from the apartment house, the jury could reasonably conclude that he was waiting for her with the intention of killing or inflicting injury upon her, and that the killing was accomplished by the means of his watching and waiting in concealment."  (*People v. Harrison, supra,* at p. 631; see also, *People v. Atchley* (1959) 53 Cal.2d 160, 176 [346 P.2d 764].)

In the present case, similarly, there was evidence that defendant armed himself with a shotgun, was not observed on the street either before or after the shooting, and shot Lela from a concealed position almost immediately after she returned home.  As in *Harrison*, the jury could reasonably conclude from this evidence that the killing was preceded by a period of watchful waiting and therefore was accomplished by means

23

of lying in wait.

Defendant insists that Lela was not shot immediately after she returned home or immediately after she entered her bedroom and that the substantial interval of time which elapsed precludes an inference of lying in wait.  In making this argument defendant relies on the testimony of Lela's mother, who stated that "it couldn't have been more than 12 minutes" from the time Lela began to walk towards her bedroom until the shotgun was fired.

However, other substantial evidence in the case supports a reasonable inference that the shot was fired very soon after Lela entered her bedroom.  Lela had been watching a television show at a friend's apartment and departed after the program ended at 11 p.m.  Lela's parents had been watching the same program and Lela's father went to bed after its end while her mother stayed up to watch the news.  When Lela arrived home, her father had already retired.  After exchanging a few words with her mother, Lela proceeded to her bedroom.  Lela's mother responded to the noise of the shotgun by looking out the family room window, conferring with her husband in the hallway, and looking out the kitchen window (she saw no one from either window).  She and her husband then called to Lela and knocked at her door before entering.  They found Lela on the floor, dressed in a bra and pajama pants.  The pajama top was on the bed.  Lela's parents did not immediately comprehend what had happened and more time passed before they realized that Lela had been shot and was gravely wounded.  They went to the telephone for help.  Not remembering the number to call, they called the operator who connected them with the sheriff's office.  Deputy Sheriff Edward Mee testified that he was dispatched to the residence at 11:08 or 1:09 p.m.

The brief interval of time which appears to have elapsed between Lela's entry into her bedroom and the firing of the fatal shotgun did not make a finding of lying in wait unreasonable since a person concealed in ambush would wait for a clear shot at the intended victim.  The evidence is sufficient to establish lying-in-wait murder.

*CALJIC NO. 8.25.*  The term "lying in wait" was defined for the jury in the language of CALJIC No. 8.25, as follows: "The term, 'lying in wait,' is defined as waiting and watching for an opportune time to act, together with a concealment by ambush or some other secret design to take the other person by surprise.  The lying in wait need not continue for any particular period of time provided that its duration is such as to show a state of mind equivalent to premeditation *or* deliberation."  (Italics added.)

Defendant argues that the instruction's use of the disjunctive "or" (italicized above) is incorrect and that the duration of the lying in wait must be sufficient to show a state of mind equivalent to both premeditation *and* deliberation.  We rejected the same contention in *People v. Ruiz* (1988) 44 Cal.3d 589, 614-615 [244 Cal.Rptr. 200, 749 P.2d 854], concluding that the instruction's disjunctive phraseology is neither inappropriate nor misleading.

People v. Edelbacher, 1019-1021.

     The law on insufficiency of the evidence claim is clearly established.  The United States Supreme Court has held that when reviewing an insufficiency of the evidence claim on

24

habeas, a federal court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Sufficiency claims are judged by the elements defined by state law. Id. at 324 n. 16.

The Supreme Court applied the Jackson standard in analyzing the sufficiency of the evidence to support the finding of guilt as to lying-in-wait murder, considering whether the jury could reasonably have found the elements of lying-in-wait murder.  This court finds that Petitioner does not demonstrate that the court's conclusion represents an unreasonable application of the evidence presented in case.  He simply argues another interpretation of the facts.

In regard to the claim that CALJIC 8.25 is improper due to the use of the disjunctive as set forth above,  Petitioner does not distinguish People v. Ruiz, the California case relied on by the court in rejecting his claim.  Petitioner has therefore failed to carry his burden of showing that "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  This contention presents no basis for habeas corpus relief.

Lying in Wait as a Special Circumstance

Petitioner contends that he is entitled to relief on the finding of lying in wait as a special circumstance  because the instructions on lying in wait were erroneous, there was insufficient evidence of the special circumstance, and the application of the lying in wait special circumstance to this case failed to sufficiently narrow the class of crimes for which death or life without possibility of parole is an appropriate punishment.

The California Supreme Court denied these claims as follows:

1. *Lying-in-wait Special Circumstance*

Defendant urges reversal of the lying-in-wait special circumstance on the following grounds: (1) the jury instructions failed to explain how the lying-in-wait special

circumstance differs from lying in wait as a basis for first degree murder; (2) there was no substantial evidence to support the lying-in-wait special circumstance; (3) the corpus delicti requirement applies to the lying-in-wait special circumstance and was not satisfied; and (4) the lying-in-wait special circumstance fails to provide a meaningful basis for imposition of the death penalty and thus violates the Eighth Amendment of the federal Constitution.

*Instructions*.  Lying in wait constitutes a special circumstance under the 1978 death penalty law where "[t]he defendant intentionally killed the victim while lying in wait."  (§ 190.2, subd. (A)(15), italics added.)  Lying in wait provides a basis for a first degree murder conviction where the murder "is perpetrated by means of .   .   . lying in wait .   .   ." (§ 189, italics added.)  In *Domino v. Superior Court* (1982) 129 Cal.App.3d 1000 [181 Cal.Rptr. 486], the court concluded that the category of murders committed "while" lying in wait is narrower than the category of murders committed "by means of" lying in wait, and that the lying-in-wait special circumstance requires that the killing "take place during the period of concealment and watchful waiting or the lethal acts must begin at and flow continuously from the moment the concealment and watchful waiting ends." (*Domino v. Superior Court, supra,* at p. 1011.)  Relying on *Domino,* defendant contends that the jury instructions given in this case on the lying-in-wait special circumstance were defective because they merely incorporated by reference the CALJIC No. 8.25 definition of lying-in-wait murder.

We need not decide in this case whether the distinction drawn in *Domino* is correct. There was no evidence that Lela's murder was committed some time after rather than during the lying in wait and thus no rational juror could conclude, under any reasonable construction of the statutory language, that defendant committed the murder "by means of" lying in wait but not "while" lying in wait.  The fatal shot was fired through a window from outside the victim's residence, the victim was obviously taken unawares, and the shooter was not observed either before or after the shooting. The distinction drawn by *Domino* simply has no relevance to the facts of this case and an instruction explaining the distinction could not have resulted in a verdict more favorable to defendant.

*Sufficiency of the evidence.*  Defendant's argument that the evidence was insufficient to support the lying-in-wait special circumstance incorporates by reference the arguments made against the sufficiency of the evidence to support the verdict of first degree murder.  For the reasons already stated, we reject these arguments in this context as well.

.   .   .   .

*Constitutionality*.  To avoid the Eighth Amendment's proscription against cruel and unusual punishment, a death penalty law must provide a "meaningful basis for distinguishing the few cases in which [the death penalty] is imposed from the many cases in which it is not." (*Furman v. Georgia* (1972) 408 U.S. 238, 313 [33 L.Ed.2d 346, 392, 92 S.Ct. 2726] (conc. opn. of White, J.); accord, *Godfrey v. Georgia* (1980) 446 U.S. 420, 427 [64 L.Ed. 2d 398, 406, 100 S.Ct. 1759] (plur.opn.).)  Defendant maintains that the lying-in-wait special circumstance, if it applies to the facts of this case, does not provide a meaningful basis for narrowing the class of murders for which death may be imposed.

26

Murder committed by lying in wait has been "anciently regarded . . . as a particularly heinous and repugnant crime." (Note, Murder Committed by Lying in Wait (1954) 42 Cal.L.Rev. 337.)  The lying-in-wait special circumstance also requires that the murder be intentional, thus eliminating murders where only implied malice has been established.  (See *People v. Mattison* (1971) 4 Cal.3d 177, 182-183 [93 Cal.Rptr. 185, 481 P.2d 193].)  We are satisfied that the lying-in-wait special circumstance provides a "principled way to distinguish this case" from other first degree murders and thus comports with the Eighth Amendment requirements elucidated in *Godfrey v. Georgia, supra*, 446 U.S. 420.  (See *Proffitt v. Florida* (1976) 428 U.S. 242, 255-256 [49 L.Ed.2d 913, 924-925, 96 S.Ct. 2960]; *People v. Anderson* (1987) 43 Cal.3d 1104, 1147 [240 Cal.Rptr. 585, 742 P.2d 1306]; *People v. Rodreguez* (1986) 42 Cal.3d 730, 780-781 [230 Cal.Rptr. 667, 726 P.2d 113].)

*People v. Edelbacher*, 1021-1023.

Petitioner's contention regarding the giving of the lying-in-wait instruction is based on California law and therefore provides no basis for habeas corpus relief in this court.  The court has already addressed and rejected Petitioner's claim that there was insufficient evidence to support a guilty verdict based on murder by lying in wait.  The court rejects Petitioner's argument regarding sufficiency of the evidence to support the giving of the instruction on that crime.

In support of his final argument that the application of the lying- in- wait special circumstance to this case was unconstitutional for failing to sufficiently narrow the class of crimes for which death or life without possibility of parole is an appropriate punishment, Petitioner provides some public policy discussion.  In doing so, he cites a variety of California Supreme Court cases.  Petitioner does not, however, provide any citation to any United States Supreme Court authority, as required to meet his burden of showing that the California Supreme Court's resolution of this issue "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  Accordingly, the court finds that this contention provides no basis for habeas corpus relief.

Evidence of  Petitioner's Financial Obligations

Petitioner contends that the trial committed reversible error by admitting evidence of Petitioner's financial debts, arrearages and obligations to support a theory of murder for

27

financial gain.  He claims that the evidence should have been excluded as irrelevant and

overly prejudicial.  He also claims that his trial counsel's failure to object to this evidence

amounts to ineffective assistance of counsel.

The California Supreme Court addressed this contention as follows:

J.  *Admissibility of Evidence of Defendant's Debts*

The prosecution introduced evidence of defendant's precarious financial position at
the time of Lela's death to establish defendant's motive for killing her and in proof of
the financial-gain special circumstance.  In this section we consider defendant's
contention that evidence of his various debts was inadmissible for any purpose and
that his trial counsel's failure to object constituted ineffective representation.  In the
next section we consider other contentions relating to the financial-gain special
circumstance.

Evidence of a defendant's poverty or indebtedness, without more, is inadmissible to
establish motive for robbery or theft because it is unfair to make poverty alone a
ground of suspicion and the probative value of the evidence is deemed to be
outweighed by the risk of prejudice.  (*People v. Hogan* (1982) 31 Cal.3d 815, 854
[183 Cal.Rptr. 817, 647 P.2d 93].)  Evidence of poverty or indebtedness is
admissible, however, in a variety of circumstances, such as to refute a defendant's
claim that he did not commit the robbery because he did not need the money (*People
v. Gorgol* (1953) 122 Cal.App.2d 281, 303 [265 P.2d 69]), or to eliminate other
possible explanations for a defendant's sudden wealth after a theft offense (*People v.
Hogan, sugpra*, at p. 854; *People v. Orloff* (1944) 65 Cal.App.2d 614, 620 [151 P.2d
288]).  (See generally, 2 Wigmore, Evidence (Chadbourn rev. 1979) § 392, pp. 430 -
433.)

Defendant in the present case owed Lela approximately $700 in child support
arrearages and over $48,000 to equalize community property division.  The latter
obligation was due on April 18, 1981.  It was the prosecution's position, explained at
greater length in the next section, that defendant had profited uniquely from Lela's
death.  Once the debtor-creditor relationship had been established between defendant
and the victim, evidence that defendant had a number of other debts, some of which
were in arrears, had substantial relevance to show the motive for murder of
defendant's creditor, and this relevance clearly outweighed the risk of undue
prejudice.  The evidence was admissible and counsel's failure to object did not
demonstrate incompetence.

*People v. Edelbacher*, 1023-1024.

Petitioner's contention that the evidence should have been excluded as irrelevant and

overly prejudicial is based on California case law and Evidence Code Sections 352 and 210.

These state law claims do not provide a basis for habeas corpus relief in this court.  As with

all of Petitioner's evidentiary claims, his general reference to due process is insufficient to

28

state a claim, as Petitioner has failed to demonstrate any underlying error. See Lewis v.

Jeffers, 497 U.S. 764, 780 (1990) (federal habeas court must respect a state court's

application of its own law and must not engage in *de novo* review);  See, Estelle v. McGuire,

502 U.S. 62, 72 (1991) (A challenge to a jury instruction solely as an error under state law

does not state a claim cognizable in a federal habeas corpus action. To obtain federal

collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction

by itself so infected the entire trial that the resulting conviction violates due process.)

Because Petitioner has failed to demonstrate any error in the admission of the evidence of his

financial debts, arrearages and obligations, his trial counsel's failure to object to the evidence

cannot be characterized as ineffective assistance of counsel.  The court finds, therefore, that

Petitioner has failed to meet his burden and this contention presents no basis for habeas

corpus review.

Special Circumstance of Intentional Murder for Financial Gain

Petitioner contends that his judgment is invalid because it was based on an improper

findings of financial gain as a special circumstance.  Petitioner claims that the financial gain

special circumstance cannot be construed to apply to the facts of this case, because such

construction would make it unconstitutional and overbroad.  Petitioner also claims that the

jury was improperly instructed with regard to the special instruction of financial gain under

CALJIC 8.81.1, because it did not expressly state that "motive for financial gain was an

element.  Finally, Petitioner claims that there was insufficient evidence to support a finding

of murder for financial gain

The California Supreme Court addressed these claims as follow:

K.  *Financial-gain Special Circumstances*

Under the 1978 law, the death penalty may be imposed if "[t]he murder was
intentional and carried out for financial gain."  (§ 190.2, subd. (a)(1).)  Defendant
contends that this special circumstance cannot be construed to apply to the facts of
this case without making it unconstitutionally vague and overbroad (both as failing to
provide fair warning of the conduct prohibited and as failing to provide a meaningful
basis for selecting death-eligible defendants),  that the instructions regarding this

special circumstance were inadequate, and that there was insufficient evidence to support a finding of murder for financial gain.

*Interpretation.* In *People v. Bigelow, supra,* 37 Cal.3d 731, the prosecution's evidence indicated that the defendant had killed the victim after kidnaping and robbing him. Construing the financial-gain special circumstances as applying to this situation would have created a large area of overlap between this special circumstance and that of felony murder, with a resulting risk of prejudice to the defendant. Eliminating the overlap would not prejudice the prosecution, we reasoned, because there would remain at least one special circumstance – either financial gain or felony murder – applicable in virtually all cases of murder to obtain money or other property. Accordingly, we adopted a limiting construction "under which the financial gain special circumstance applies only when the victim's death is the consideration for, or an essential prerequisite to, the financial gain sought by the defendant." (*Bigelow, supra,* at p. 751; see also, *People v. Montiel* (1985) 39 Cal.3d 910, 927 [218 Cal.Rptr. 572, 705 P.2d 1248].)

Defendant argues, first, that the financial-gain special circumstance should not be construed to apply to "every murder where there is any possibility of a financial effect upon a defendant" and, in particular, that it cannot apply to the facts of this case because after Lela's death all debts owed to her would become assets of her estate and enforceable by the executor or administrator. Defendant maintains that Lela's death did not result directly in any financial benefit to him.

Proof of pecuniary benefit to the defendant from the victim's death is neither necessary nor sufficient to establish the financial-gain special circumstance. As we recently explained, "the relevant inquiry is whether the defendant committed the murder in the expectation that he would thereby obtain the desired financial gain." (*People v. Howard, supra,* 44 Cal.3d at p. 409.) As so construed, the special circumstance provision is not constitutionally vague or overbroad. It has been widely recognized that murder for financial gain is an especially vile crime for which the death penalty may appropriately be imposed. (See, e.g., Model Pen. Code & Commentaries (part II, vol. 1) § 210.6, pp. 109-110.)

Defendant argues, next, that the term "gain" means a profit or increase and does not include the mere avoidance or cancellation of a financial obligation. The proposed construction is artificially restrictive and does not accord with the ordinary meaning of the statutory term. In common usage, the cancellation of a debt or the avoidance of a loss constitutes a financial benefit or gain. The construction urged by defendant would result in an arbitrary and irrational distinction, moreover, since a killing to avoid a loss is as basely motivated and repugnant as killing for a positive reward or profit. We conclude that a murder for the purpose of avoiding a debt is murder for financial gain within the meaning of section 190.2, subdivision (a)(1).

*Sufficiency of the evidence.* There was substantial evidence that defendant was motivated by a belief that Lela's death would permit him to avoid his obligations to her.

It was undisputed that at the time of Lela's death defendant was $700 in arrears in payments for child support and owed Lela over $48,000 to equalize the division of community property. Defendant's inability to meet these obligations was shown circumstantially by evidence of numerous other debts owed by defendant, some of

30

which were in arrears, and evidence that one of defendant's automobiles was repossessed shortly before the murder.  While it is true that the obligations owed to Lela would not be extinguished by her death and would be enforceable by her estate, there was also evidence that defendant believed he would benefit financially from her death.  Defendant's son was Lela's heir and defendant expected to and did gain custody of his son after Lela's death.   Defendant applied for appointment as guardian of the person and estate of his son.  Had defendant been appointed guardian of his son's estate he would have obtained control of his son's inheritance from Lela's estate.

During defendant's conversation with Phil Green, as related by defendant to McClure (and as testified to by McClure at trial), Green said he did not understand why defendant had to kill Lela because there should have been some way to work out their son's custody "and paying off the half of his [defendant's] estate to Lela."  Defendant did not deny that these were motivating considerations and later during the same conversation with McClure he told her he was going to try to "work out some papers" with his son's name on them "so that he [defendant] wouldn't lose the ranch completely."  When defendant spoke to McClure's husband Michael about Lela's death, defendant said, "Well, really it worked out good for me because I don't have any child support payments now and I have custody of my son."  Defendant said the "same thing" could happen for Michael and, in discussing the possible benefits for Michael if McClure died, he referred to McClure's "sizable bank account," the inference being that McClure's death would somehow provide Michael with access to McClure's assets, presumably through custody of their child.  This evidence was sufficient to support the finding that financial gain was a primary motive for the murder of Lela by defendant.

*Instructions*.  The jury was instructed in the language of CALJIC No. 8.81.1 as follows: "To find that the special circumstance, referred to in these instructions as murder for financial gain, is true, each of the following facts must be proved: [¶] 1.  That the murder was intentional, and [¶] 2.  That it was carried out for financial gain."

Defendant contends this instruction was inadequate because it failed to define "financial gain" and failed to explain that "for" connotes a motivation or intention.  The contention is without merit.  As we recently held, the term "for financial gain" is not a technical one and need not be defined for the jury except in the situation where there is a potential overlap with a felony-murder special circumstance.  (*People v. Howard, supra*, 44 Cal.3d at 410.)  For similar reasons, we are not persuaded the jury was likely confused by another instruction, CALJIC No. 2.51, stating that "Motive is not an element of the crime charged."  The "crime charged" was murder and any reasonable juror would have understood the instruction as referring to this substantive offense only and not to any special circumstances allegation.

*People v. Edelbacher*, 1024 - 1027.

As with all of Petitioner's state law claims, his claims regarding the correct interpretation of the financial gain special circumstance and  Penal Code Section 190.2(a)(1), provide no basis for habeas corpus relief.  In support of his contention that the financial gain special circumstance is unconstitutionally vague and overbroad as applied in this case,

31

Petitioner provides a general discussion of the concept under <u>Godfrey v. Georgia</u>, 446 U.S. 420, 427-28 (1980), in which the Supreme Court held that the Constitution requires only that a state statutory scheme provide a "meaningful basis for distinguishing the few cases in which [the death penalty] is imposed from the many cases in which it is not." Petitioner does not, however, carry his burden of demonstrating how the California Supreme Court's resolution of the issue "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d). Similarly, Petitioner fails to make the necessary showing with regard to his claims pursuant to CALJIC 8.81.1 and sufficiency of evidence, as he does not address the California Supreme Court's holdings. Accordingly, this issue presents no basis for habeas corpus relief.

Special Instruction of Murder in Retaliation against Witness

_____Petitioner contends that the conviction of first degree murder was invalid due to the improper charging of murder in retaliation against a witness in a criminal proceeding. Petitioner raises several claims stemming from the trial court allowing the prosecution to proceed with a special circumstance allegation based on a theory Petitioner murdered Lela in retaliation for her testimony against him in the earlier spousal rape trial in which Petitioner was acquitted. Petitioner claims the trial court violated due process by expanding the definition of the special circumstance for witness retaliation to include testimony against defendants for "alleged crimes" for which they were acquitted. Specifically, Petitioner argues that he was deprived of notice, because the trial court expanded the scope of the statute to cover alleged crimes. Further, Petitioner claims that, based on his prior acquittal on the spousal rape charge, this special circumstance allegation placed him in double jeopardy. Furthermore, Petitioner claims that because Penal Code section 190.2(a)(1)

requires that the victim was a witness to a crime, the special circumstance requires proof

beyond a reasonable doubt of the commission or attempted commission of a crime.  Finally,

Petitioner claims he was prejudiced because this special circumstance allegation allowed the

jury to hear otherwise inadmissible information about the prior spousal rape, and that this

prejudice was so substantial as to require reversal of the guilt determination.

In addressing this claim, the California Supreme Court held as follows:

L.  *Witness-retaliation Special Circumstance*

Another special circumstance under the 1978 death penalty law is that ". . . the victim
was a witness to a crime and was intentionally killed in retaliation for his testimony
in any criminal proceeding."  (§ 190.2, subd. (A)(10).)  The information charged
defendant with this special circumstance as follows: ". . .  the murder of said Lela
Schwartz was murder in the First Degree and said Lela Schwartz was a witness to a
crime and was intentionally killed in retaliation for her testimony in a criminal
proceeding."  At trial defendant moved to dismiss this special circumstance on the
ground that Lela had been a witness only in defendant's trial on the charge of spousal
rape and defendant's acquittal established there had been no crime for Lela to
witness.  Without expressly ruling on the motion, the trial court amended the
information to charge that Lela had been a witness to an "alleged crime."  The jury
found this special circumstance not true.

Defendant contends the court erred in denying the motion to dismiss the special
circumstance and that he was prejudiced by the erroneous ruling because it permitted
the introduction of highly prejudicial evidence regarding the spousal rape allegation
and trial.  Because this evidence was otherwise admissible to establish motive and to
explain defendant's threat to kill Lela, defendant has demonstrated no prejudice and
we need not decide whether the witness-retaliation special circumstance was properly
charged or whether any error was waived.

A witness testified that on May 31, 1980, defendant told Lela that "if she went
through with this he would blow her fucking head off."   Other witnesses established
that Lela's petition for dissolution of marriage had been filed on May 21, 1980, and
that defendant had been arrested on May 28, 1980, on the charge of spousal  rape, so
that defendant's threat could have been related to the dissolution proceeding, the
spousal rape charge, or both.

Defendant concedes that evidence of the spousal rape charge and trial may have been
relevant to establish motive but he argues it would have been inadmissible under
Evidence Code 352 because the probative value was clearly outweighed by the risk of
undue prejudice.  We disagree.  The evidence was highly relevant on the issue of
motive, which was an important issue in the case, and the risk of prejudice was not
excessive.  No evidence regarding the circumstances of the alleged spousal rape was
admitted, only the fact that the charge had been brought and tried and that defendant
had been acquitted.  Defendant was not prejudiced by the charging of the witness-
retaliation special circumstance.

33

1    People v. Edelbacher, 1027-1028.

2           To the extent that Petitioner challenges the jury instruction regarding the witness-

3    retaliation special circumstance on the ground that it contained an incorrect statement of

4    Penal Code Section 190.2(a)(10), this is a question of state law and the court may not

5    second-guess the decision of the California Supreme Court, as set forth above.  The same is

6    true as to  Petitioner's  challenge to the first degree murder conviction on the ground that he

7    was prejudiced by the introduction of evidence regarding the witness-retaliation special

8    circumstance.

9           To the extent that Petitioner alleges a due process violation resulting from the

10   allegedly improper special circumstances instruction, he has failed to provide controlling

11   Supreme Court authority to support his allegation.  Further, as Respondent points out,

12   Petitioner cannot show any harm from the witness-retaliation special circumstance

13   allegation, because the jury found that this circumstance was not true, see generally, Estelle

14   v. McGuire, 502 U.S. at 72, and the California Supreme Court found the evidence was

15   otherwise admissible.

16          While Petitioner's double jeopardy claim can be properly addressed in this court, it is

17   without merit.  The prohibition against double jeopardy protects against multiple

18   punishments for the same offense.  See Ohio v. Johnson, 467 U.S. 493, 498 (1984).As

19   Respondent argues, Petitioner was not subjected to double jeopardy because he was not

20   called upon to defend against, and was not in jeopardy of being punished for, the earlier

21   spousal rape.  Further, because the jury found the special circumstance to be not true,

22   Petitioner is not suffering any punishment.

23          Based on the above, the court concludes that Petitioner's contention  based on the

24   witness-retaliation special circumstance  provides no basis for habeas corpus relief.

25   Failure to Give Jury Instructions on Lesser Included Offenses

26          Petitioner contends that the trial court's refusal to instruct the jury on the lesser

27

28                                              34

1   included offense of second degree murder was structural error mandating a new trial.

2   Petitioner claims that the right to instructions on a lesser included offense under California

3   law is well established, and the arbitrary deprivation of such a right is a violation of due

4   process.  See People v. Geiger, 35 Cal.3d 510, 519 (1984); Hicks v. Oklahoma, 447 U.S.

5   343, 346 (1980).   He claims that a properly instructed jury in this case could have concluded

6   that Petitioner was the killer yet did not have the requisite mental state for first degree

7   murder.

8          The California Supreme Court addressed this issue as follows:

9          M.  *Failure to Instruct on Second Degree Murder*

10         Defendant contends that the trial court erred in refusing to give the instructions he
           requested on second degree murder, a lesser included offense of second degree
11         murder.  We need not decide whether the failure to give these instructions as
           requested was error; any error was necessarily harmless in light of the true finding on
12         the lying-in-wait special circumstance.

13         "[I]n some circumstances it is possible to determine that although an instruction on a
           lesser included offense was erroneously omitted, the factual question posed by the
14         omitted instruction was necessarily resolved adversely to the defendant under other,
           properly given instructions.  In such cases the issue should not be deemed to have
15         been removed from the jury's consideration since it has been resolved in another
           context, and there can be no prejudice to the defendant since the evidence that would
16         support a finding that only the lesser offense was committed has been rejected by the
           jury."  (*People v. Sedeno* (1974) 10 Cal.3d 703, 721 [112 Cal.Rptr. 1, 518 P.2d 913],
17         disapproved on another point in *People v. Flannel* (1979) 25 Cal.3d 668, 684, fn. 12
           [160 Cal.Rptr. 84, 603 P.2d 1]; see also, *People v. Wickersham* (1982) 32 Cal.3d 307,
18         335 [185 Cal.Rptr. 436, 650 P.2d 311].)

19         Defendant argues that a jury instructed on a second degree murder might have
           convicted him of that offense because it was not convinced beyond a reasonable
20         doubt that the murder was committed intentionally and after premeditation and
           deliberation.  According to defendant, the jury might have concluded that he
21         entertained only implied malice, that he acted on impulse, or both.  In returning a true
           finding on the lying-in-wait special circumstance, however, the jury expressly found,
22         on proper instructions, that the murder was intentional and was committed while
           lying in wait.  (The finding on the financial-gain special circumstance also
23         established that the murder was intentional.)  Thus, the jury found that the murder
           was committed with express malice and in a manner which, by force of statute,
24         elevated it to first degree murder.

25   People v. Edelbacher, 1028-29.

26         Petitioner addresses this finding by the California Supreme Court only to the extent

27

28                                          35

of arguing that the error was not harmless because no other instruction presented the jury

with a theory of intentional and malicious homicide lacking premeditation and deliberation.

This argument ignores the California Supreme Court's conclusion that the jury's finding on

the lying in wait special circumstance necessarily included a finding that the murder was

committed with express malice, which under California statutory law, elevated the killing to

first degree murder.  This court finds that Petitioner has in no way carried his burden of

showing that the California Supreme Court's decision on the issue  resulted in a decision that

was contrary to, or involved an unreasonable application of clearly established law as

determined by the Supreme Court.  Thus, Petitioner has established no basis for relief in this

action.

Prosecutorial Misconduct Based on Comments  Regarding Petitioner's Prearrest Silence

Petitioner contends that the prosecutor's questions and comments on Petitioner's pre-

trial silence requires reversal as a violation of his Fifth Amendment right against self-

incrimination and Sixth Amendment right to counsel.  He further claims that both his state

and federal due process rights were violated.

The California Supreme Court denied this claim as follows:

N.  *Comment on Defendant's Pretrial Silence*

On the night following Lela's murder, sheriff's deputies found defendant at the
residence of Sheila Butler.  They handcuffed defendant and seized some clothing
which, according to Butler, defendant had been wearing when he first arrived at the
apartment.  Defendant informed the officers he had been in touch with his attorney
and the attorney wanted to be present during any questioning.  The officers released
defendant from the handcuffs and departed.

At trial, on direct examination defendant testified that he had been with Carol Leos
on the evening of Lela's murder and that on the following morning he was advised by
his attorney not to discuss the case with anyone.  During cross-examination,
defendant testified without objection that he did not mention the Leos alibi to his
attorney or to Sheila Butler before the officers' arrival.  Later defendant was asked
whether, after the officers handcuffed him, he felt it was time to tell them about his
activities on the day before.  Defendant replied, after an objection by his counsel was
overruled, that he had wanted his attorney present during any questioning, that he had
been told he was not being placed under arrest, and that he had not felt it necessary to

36

tell the officers about his activities.  Defendant was also asked why he had not told his mother about the Leos alibi.  A defense objection to this question was also overruled.  During closing argument the prosecutor urged that these instances of pretrial silence underminded the credibility of defendant's alibi defense.

Defendant contends that using his pretrial silence to impeach his alibi testimony violated his Fifth Amendment privilege against self-incrimination as well as his Sixth Amendment right to counsel.  We do not find it necessary to address the merits of these contentions.  Given defendant's testimony on direct examination that he had been advised by his attorney not to discuss the case, the unchallenged evidence that he had not mentioned the Leos alibi to his attorney or to Butler, and the strong evidence of defendant's guilt, the jury's verdict would not have been affected by the evidence and brief comment regarding defendant's failure to relate the Leos alibi to the sheriff's deputies at Butler's apartment.  Any error was harmless beyond a reasonable doubt.

People v. Edelbacher, at 1029.

Petitioner does not address the California Supreme Court's conclusion that any error in using his pretrial silence to impeach his alibi testimony was harmless beyond a reasonable doubt.   This court finds, therefore, that Petitioner has failed to carry his burden to establish a basis for habeas corpus relief on this issue.

Prosecutorial Misconduct At Closing Arguments

Petitioner contends that the prosecutor made numerous statements during closing argument attacking his character and veracity and also improperly commented on his demeanor in court.

In rejecting this contention, the California Supreme Court held as follows:

O.  *Prosecutorial Misconduct During Argument*

Defendant contends that statement made by the prosecutor in closing argument at the guilt phase were improper and constituted misconduct.

Defendant's failure to object to any of the statements he now cites as misconduct constituted waiver of the issues unless an admonition would not have cured the harm. (*People v. Fosselman* (1983) 33 Cal.3d 572, 581 [181 Cal.Rptr. 855, 659 P.2d 1144]; *People v. Green, supra*, 27 Cal.3d 1, 34.)  This rule applies to capital as well as noncapital cases. (*People v. Miranda, supra*, 44 Cal.3d 57, 108, fn. 30.)  To determine whether an admonition would have been effective, we consider the statements in context.

Defendant argues that the prosecutor improperly attacked his character by referring to him as a "contract killer," a "snake in the jungle," "slick," "tricky," a "pathological liar," and "one of the greatest liars in the history of Fresno County."

Any harm caused by these characterizations could have been cured by an admonition and, in any event, the remarks do not appear to have been misconduct.  Referring to the testimony and out-of-court statements of a defendant as "lies" is an acceptable practice so long as the prosecutor argues inferences based on evidence rather than the prosecutor's personal belief resulting from personal experience or from evidence outside the record.  (*People v. Reyes* (1974) 12 Cal.3d 486, 505 [116 Cal.Rptr. 217, 526 P.2d 225]; *People v. Escarcega* (1969) 273 Cal.App.2d 853, 862 [78 Cal.Rptr. 785].)  Argument may be vigorous and may include opprobrious epithets reasonably warranted by the evidence.  (See, e.g., *People v. Thornton, supra*, 11 Cal.3d 738, 763 ["a person who is a devotee of Marquis de Sade, a practitioner of sadism"]; *People v. Mitchell* (1966) 63 Cal.2d 805, 809 [48 Cal.Rptr. 371, 409 P.2d 211] ["professional robber"]; *People v. Ketchel* (1963) 59 Cal.2d 503, 540 [30 Cal.Rptr. 538, 381 P.2d 394] ["cop-killers"]; *People v. Terry* (1962) 57 Cal.2d 538, 561-562 [21 Cal.Rtpr. 185, 370 P.2d 985] ["animal" and one of the most "vicious gunmen and killers"].)  The prosecutor's comments were based on the evidence and amounted to no more than vigorous but fair argument.

Defendant also complains of two comments by the prosecutor concerning his courtroom demeanor.  The first comment concerned defendant's failure to show emotion when testifying ("he doesn't act emotionally, you saw him sitting on the witness stand .  .  . he didn't have any emotion") and the other concerned his note taking during the prosecutor's argument ("Look at him there writing right now, getting ready, making notes, getting ready right now for the defense, still manipulating .  .  .  All through the trial, did the same thing").

Comment on a defendant's demeanor as a witness is clearly proper and comment on courtroom demeanor may be proper under some circumstances.  (See, e.g., *People v. Heishman* (1988) 45 Cal.3d 147, 197 [246 Cal.Rptr. 673, 753 P.2d 629]; *People v. Thornton, supra*, 11 Cal.3d at p. 763.)  In support of the contention that prosecutorial comment in argument on an accused's courtroom demeanor should result in reversal, defendant relies primarily on *U.S. v. Schuler* (9th Cir. 1987) 813 F.2d 978, in which a divided court held that a prosecutor's comment during argument on a nontestifying defendant's laughter during testimony was misconduct warranting reversal of the judgment.  That decision was expressly premised on the reasoning that prosecutorial comment impinges on the defendant's Fifth Amendment right not to testify (at p. 981) and thus it can have no application to a case such as this where the defendant has testified and put his credibility at issue.

We need not decide whether it was misconduct to comment on defendant's note taking, as any harm from this brief and mild comment could have been cured by admonition.

People v. Edelbacher, at 1029 031.

Under California law, a failure to raise a contemporaneous objection and seek a jury admonition waives a claim of prosecutorial misconduct unless an objection would have been futile because no prosecutorial retraction or judicial admonition could obviate the prejudicial effect of the prosecutor's comment.  People v. Green, 27 Cal.3d 1, 34 (1980), abrogated on

1    other grounds in <u>People v. Martinez</u>, 20 Cal.4th 225, 234 (1999).  The Ninth Circuit has held

2    that where a petitioner  procedurally defaults a claim of prosecutorial misconduct by failing

3    to make contemporaneous objections, and the California court consequently invoked a

4    procedural bar to consideration of the claim, the federal courts cannot review the claim on

5    habeas.  <u>Rich v. Calderon</u>, 187 F.3d 1064, 1069 -1070 (9th Cir. 1999).

6           Petitioner provides no direct response to the California Supreme Court's ruling that

7    issue was procedurally defaulted and so has not carried his burden of demonstrating that he is

8    entitled to habeas corpus relief on this issue.

9    <u>Claims Regarding California Courts</u>

10          Petitioner contends that the California Supreme Court and the California Court of

11   Appeal failed to address numerous issued raised by Petitioner on direct appeal and in his

12   petition for writ of habeas corpus, thereby depriving Petitioner of a meaningful appeal,

13   effective assistance of counsel, a fair trial, a reliable special circumstances determination,

14   equal protection of the law, and due process.

15          In support of this contention, Petitioner incorporates all of the allegations and facts in

16   the preceding claims and the records of the appellate and postconviction proceedings before

17   the California Supreme Court and Court of Appeal.   Petitioner then specifically contends as

18   follows:

19          The adjudication, if any, of the claims raised by Petitioner resulted in a
             decision that was contrary to clearly established federal law as articulated in the
20           decisions of the Supreme Court of the United States; based on an arbitrary and
             unreasonable application to the facts of clearly established federal law as articulated
21           in the decisions of the Supreme Court of the United States; and based on arbitrary and
             unreasonable determinations of the facts in light of the evidence presented in the state
22           proceeding.
             Petitioner's claims were neither fully nor fairly adjudicated.  As a
23           consequence, Petitioner was prejudiced.

24   Petitioner provides no further detail in support of this contention.   The court finds that this

25   bare contention, which essentially simply states the standard of review in the present case,

26   provides no separate basis for habeas corpus relief.

27

28                                                39

In light of the foregoing, IT IS HEREBY RECOMMENDED that this petition for writ of habeas corpus be DENIED and that the Clerk of the Court be directed to enter judgment for Respondent and to close this case.

These Findings and Recommendation are submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections.  The court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:     February 28, 2007**                    **/s/  William M. Wunderlich**
mmkd34                                            UNITED STATES MAGISTRATE JUDGE